**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:18-CV-00632-CHB**

**JEFFREY HENSLEY**                                                                 **PLAINTIFF**

**VS.**

**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security**                                          **DEFENDANT**

## FINDINGS OF FACT, CONCLUSIONS OF LAW
## AND RECOMMENDATION

The Commissioner of Social Security denied Jeffrey Hensley's applications for supplemental security income benefits and disability insurance benefits. Hensley seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Hensley (DN 17-1) and the Commissioner (DN 18) have filed a Fact and Law Summary. The District Judge has referred the case to the undersigned United States Magistrate Judge (DN 13) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations. 28 U.S.C. § 636(b)(1)(B).

### I. Findings of Fact

Jeffrey Hensley ("Hensley") is 44 years old, lives with his wife and children, and did not complete high school. On the day he turned 18, Hensley went straight into doing line construction. (Tr. 76-77). He claims that in 2012 or 2013 he had a mild heart attack and heat stroke while working on an electrical pole in Louisa, Kentucky, and since then his ability to work has not been

1

the same. (TR. 78). Hensley explains that he tried to continue working for about another year after his heart attack but eventually quit because he couldn't perform the work. (*Id.*). Due to his constant back pain, migraines, shaking hands, COPD, and asthma, Hensley alleges that he can do little housework and needs assistance at the grocery store. (Tr. 79-81). Hensley has cut "way down" on smoking cigarettes but still smokes "about a pack a day." (Tr. 82, 84).

Hensley applied for supplemental security income benefits ("SSI") under Title XVI and disability insurance benefits ("DIB") under Title II, claiming he became disabled on January 1, 2014 (Tr. 222-238), as a result of pain while standing; heart problems; high blood pressure; depression; back pain; memory issues; and concentration issues. (Tr. 266). His applications were denied initially (Tr. 110, 127) and again on reconsideration (Tr. 147, 166). Administrative Law Judge D. Lyndell Pickett ("ALJ Pickett") conducted a hearing in Louisville, Kentucky, on October 30, 2017. (Tr. 70-72). Hensley attended the hearing with his attorney. (*Id.*). An impartial vocational expert also testified at the hearing. (*Id.*). ALJ Pickett issued an unfavorable decision on January 30, 2018. (Tr. 33).

ALJ Pickett applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Hensley has not engaged in substantial gainful activity since January 1, 2014, the alleged onset date. (Tr. 23). Second, Hensley has the severe impairments of degenerative disc disease, migraine headaches, coronary artery disease, hypertension, chronic obstructive pulmonary disease (COPD), asthma, obstructive sleep apnea, carpal tunnel syndrome, and obesity. (Tr. 23). Third, none of Hensley's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1.

(Tr. 25). Between steps three and four, ALJ Pickett found that Hensley has the residual functional capacity to perform "light work" with the following limitations:

> He could never crawl or climb ladders, ropes, or scaffolds; he could occasionally balance, stoop, kneel, crouch, or climb ramps or stairs; he could occasionally have exposure to extreme cold or heat, humidity, fumes, odors, dusts, gases, or poor ventilation; he could never have exposure to hazards such as unprotected heights or dangerous machinery; he should be in an environment with a noise level of three or less as defined in the SCO; and he could frequently handle, finger or feel with the bilateral upper extremities.

(Tr. 26). Fourth, ALJ Pickett found Hensley could not perform any of his past relevant work. (Tr. 31). Fifth and finally, considering Hensley's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 32).

Based on this evaluation, ALJ Pickett concluded that Hensley was not disabled, as defined in the Social Security Act, from January 1, 2014, through January 30, 2018, the date of his decision. (Tr. 33). Hensley appealed ALJ Pickett's decision. (Tr. 221). The Appeals Council declined review. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Hensley appealed to this Court. (DN 1).

## II. Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the administrative law judge employed the proper legal standards in

3

reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Conclusions of Law

#### A. Finding No. 4: Listed Impairment

Hensley first claims that "at step three of the sequential evaluation process . . . ALJ Pickett found that Plaintiff failed to meet or equal any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1[.]" But that statement is the entirety of Hensley's argument. He does not identify which listing he allegedly meets and does not provide any support for meeting a specific listing from the regulations. Because Hensley mentions this issue in a cursory manner, "unaccompanied by some effort at developed argument," this argument is deemed waived and does not merit further consideration. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997); *see also Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007) ("We decline to identify and address the arguments that Petitioner could have made but did not, and instead find that he has waived any possible challenge to the dismissal of claims.").

#### B. Finding No. 5: Residual Functional Capacity

Hensley appears to make two challenges to ALJ Pickett's Finding No. 5, the residual functional capacity ("RFC") determination. The RFC finding is the administrative law judge's ultimate determination of what a claimant can still do despite his physical and mental limitations.

20 C.F.R. §§ 416.945(a), 416.946. The administrative law judge bases his RFC finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

1. Treating Physician Opinions

Hensley claims that ALJ Pickett failed to give controlling weight to his treating sources. (DN 17-1, at pp. 7-11). While Hensley spends considerable time outlining the so-called "treating physician rule," he does not identify which of the medical opinions should have been given controlling weight as treating physicians and does not otherwise explain how ALJ Pickett improperly weighed any particular opinion. Once again, this Court will not develop perfunctory arguments that a claimant could have but failed to make and recommends this claim be deemed waived.

Even so, after reviewing ALJ Pickett's RFC determination, there was no treating physician opinion in the record that ALJ Pickett could have improperly considered. ALJ Pickett assigned weight to the state agency medical and psychological consultant opinions; Dr. Dennis' consultative examining opinion from 2015; and assessments from pain management providers at Flaget Memorial Hospital from June to September of 2015. (Tr. 30-31). State agency consultants are non-examining medical sources that under the regulations cannot serve as treating physicians. *See* 20 C.F.R. § 1527(e)(2). Similarly, the opinions of one-time consultative examiners are not subject to the treating physician rule and are entitled to no special deference. *See Tucker v. Comm'r of Soc. Sec.*, -- F. App'x --, 2019 WL 2418995, at *5 (6th Cir. June 10, 2019) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (add'l citation omitted)). Nor can the pain management recommendations be considered opinions from treating sources. As ALJ Pickett noted, the

5

restrictions from the pain management providers were given "after pain management injections and [were] temporary in nature." (TR. 30). Hensley has therefore failed to demonstrate that ALJ Pickett erred with respect to a treating physician opinion evaluation.

## 2. Misstatements of Evidence

Hensley lastly argues that ALJ Pickett misstated the evidence in the record by improperly citing to medical exhibits and making statements contradictory to Hensley's medical records. (DN 17-1, at pp. 9-10). It appears that Hensley takes issue with three specific findings by ALJ Pickett.

First, Hensley broadly claims that instead of citing to specific portions of the 56 medical exhibits in the record, ALJ Pickett only cited to the exhibits by number. Essentially Hensley takes issue with the manner that ALJ Pickett cited to medical exhibits. Hensley, for example, believes ALJ Pickett erred by stating that "medical records observed the Plaintiff on multiple occasions as oriented with adequate grooming and appropriate clothing[] (Exhibits 19F and 46F and 48F)" because only Exhibit 19F fully supported that statement. This argument is not compelling. While ALJ Pickett did not cite to specific pages in the record, his citation to medical exhibit numbers specifically identified the evidence he was referencing. After reviewing Exhibits 19F, 46F, and 48F, the Court concludes that ALJ Pickett's statement that "medical records observed the Plaintiff on multiple occasions as oriented with adequate grooming and appropriate clothing" is supported by the cited exhibits. (*See* Tr.1023, 1029, 1036 (Ex 46F); Tr.1059, 1063,1068 (Ex 48F)).

Hensley also states that ALJ Pickett used the abundance of medical records against the claimant by stating that Hensley has mild limitation in managing himself because he can fix simple foods, grocery shop for short periods of time, and help care for his two sons. (DN 17-1, at p. 9). Hensley states there are no specific citations to this evidence but instead mere references to

"Exhibits 5E through 7E, 9E, 10E, 14E through 17E, 19F and hearing testimony." (*Id.*). Once more, in reviewing these exhibits the Court finds ALJ Pickett has not misstated the record evidence. (*See, e.g.,* Tr. 285 (Ex. 5E) ("[o]n days that I feel ok I'll go to the store and get some groceries for house if I can" and "I help get my son ready for the day ahead"), Tr. 287 (Ex. 5E) ("I make sandwiches or frozen dinners while my wife is at work" and "I can do laundry and most household repairs"); Tr. 297 (Ex. 6E) (he shops for "groceries …maybe once a week"); Tr. 305 (Ex. 7E) (he fixes sandwiches and tv dinners for himself and others but "can't cook big meals"); Tr. 316 (Ex. 9E) ("[w]hen my kids get home I help with homework"); Tr. 323-25 (Ex. 10E); Tr. 346-47 (Ex. 14E) (he can "walk outside for a few minutes"); Tr. 367 (Ex. 17E); and Tr. 674-75 (Ex. 19F) ("He was able to assist with some light household chores, manage finances, make purchases, and he was able to operate a motor vehicle.")). ALJ Pickett's statement that Hensley has mild limitation in managing himself is supported by substantial evidence in the record, namely Hensley's own statements from function reports and statements from his relatives.

Hensley lastly claims it was contradictory for ALJ Pickett to state that Hensley "has not been . . . advised to undergo surgery" when the record actually reflects that Hensley was advised to undergo surgery but was not interested in surgery. (*Id.* at 10). This contradiction, according to Hensley, demonstrates that ALJ Pickett's decision is not supported by the medical records. (*Id.*). This Court again does not agree. ALJ Pickett noted that when Hensley was seen by a neurosurgeon for cervical spine complaints, Hensley stated that he was "not interested in surgery." (Tr. 28 (citing Ex. 40F; 45F)). ALJ Pickett also stated that a late 2015 neurosurgery evaluation indicated tenderness but that findings were largely within normal limits and the physician recommended "non-operative treatment." (*Id.* (citing Ex. 45F)). Hensley's statement that he was not interested in

surgery does not conflict with or contradict the physician's recommendation of non-operative treatment. Both statements were taken straight from Hensley's medical records. (Tr. 1010,1016). The Court accordingly finds no error.

### IV. RECOMMENDATION

For the above-stated reasons, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE RECOMMENDED** the Commissioner's decision be **AFFIRMED**.

Regina S. Edwards, Magistrate Judge
United States District Court

September 17, 2019

### NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.   Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.   If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:        Counsel